Submitted Clark the same health company and we'll take up Nicola versus Foley Submitted Clark the same health company and we'll take up Nicola versus Foley Ms. Anderson. Yes. Okay. May it please the Court and Counsel I'm Alison Anderson and I represent the plaintiffs appellants in this matter and two of them are here with me today Rosie Fletcher and Lindsay Nicola I'm also here at Counsel's table with Associate Mariah Noah who is prepared to separated address jurisdictional discovery if you have any questions about that and would like to hear from us on that and I'd like to reserve one minute for Ms. Noah and six minutes for rebuttal. All right. Watch the clock. We'll do. Thank you Your Honor. Today there are three points that I think are critical and key that I would like to make. And the first is that our claims are so much broader than just the sexual battery claims. They include sexual harassment, negligence, negligence claims and breach of contract. I think the second point that I'd like to hit today is that under the second prong of this court's specific jurisdiction analysis the relates to test is a separate and distinct way of meeting the second prong analysis and appellee's significant contacts with California certainly at a minimum relate to our claims. Both the sexual assault claims and the breach of contract are separate claims and are broader claims. There is no causal requirement and as explained in Yahoo and Global Commodities where a defendant's contacts with a state are greater the nature of their relatedness to the claims can be even less. And third I would love to detail for you the California specific contacts for each of the appellees that relate both to our claims for specific jurisdiction but also that separately support general jurisdiction and especially for the Olympic Committee and USSS. So with that I'll start by talking about how our claims are broader than sexual assault and sexual battery. We allege sexual harassment, negligence, negligent hiring and supervision, negligent infliction of emotional distress and breach of contract. All of which are claims that can stand alone separate and apart from the sexual assaults. Our claims are based on the systematic practices and the course of dealing between the parties. Going well beyond that snapshot in time when Peter Foley engaged in penetration or groping of my clients. This is why there are organizational defendants. This is why the USSS and Olympic Committee are here and named in this complaint. The claims of negligence, harassment and breach of contract especially in regards to their funding and facilitating of travel to trainings, competitions and events in California where Foley, a grown man, would by appellee's own planning and design be sharing hotel rooms with his and his girls who were his athletes that he had extensive control and authority over. An appellee's California conduct also aided these claims and supported the cover up of what was happening on the US Olympic snowboarding team under Foley. Can you, I'm a little bit unclear on the theory. Is it that the defendants activity in California enabled the assaults outside of California or is it that the defendants activities in California created a culture of sexual harassment that enabled the sexual assaults outside of California and the defendants would have foreseen that those assaults would have caused harm to the plaintiffs in California or is it that the activity in California alone is what gives rise to the sexual harassment? I'm not quite sure how it would give rise to the sexual assault because those were outside of California independent of assaults outside of California. I'm just a little bit unclear. I think I understand the question and I think I'll take it in two parts. First I'm going to focus on the sexual battery claims because I do think it depends on the claims that we're talking about. With the sexual battery claims, I do think we can... Can we do one thing that would just clarify because there's so many claims here. What are your best claims and can we focus on those? I think our best claims are the sexual battery and the negligence claims and the sexual harassment claim.  And so if we focus on the sexual battery claim, I do think and especially when you think about Rosie's assault, it did arise out of the contacts with California. USSS and the Olympic Committee, they're announcing their first inaugural team in California, Mammoth Mountain, their first training and that's where Rosie travels to California and it's only on the traveling back just across the border in Reno that Peter Foley assaults her. So that's the sexual battery. I would also say, you know, the court has, you know, sort of given guidance that you don't just look at the specific moment of the wrongful act of the court, but you look at the course of dealing between the parties. You look at the process between them and obviously there's a lot of California contacts with the team. But I think for sexual assault, it also just has to relate to. So while Rosie's assault arises out of and shows that causal connection, you actually don't even have to do that. You have to say it relates to. And clearly the California contacts of this team being in California for a third of the time relate to what is happening with this team and with this coach. So we take these sexual harassment claims separate and we look at those and the negligent... And for the sexual battery, is that purposeful direction? Is that the sort of theory? I think you could say that we meet that, but I don't think that's the easiest path. I think our path that is the easiest is purposeful availment, which is what the district court agreed and found ultimately. Purposeful availment from a combination of both purposeful direction and purposeful availment. So while I could argue that, I think that's not the clearest path for our case. Are you not advancing theory of general jurisdiction at this point? Are you exclusively focusing on specific jurisdiction? I think we're focusing on specific jurisdiction as potentially the easiest path for all three of the appellees. However, we do think there's a strong case to be made for the Olympic Committee and for USSS. And the reason that I think there's a strong case to be made there is because it's been said that it's a comparative analysis. When you look at general jurisdiction, you look to compare their contacts with other states. So while appellees rely on cases like Daimler and others where it's the same amount of contact that they have in all 50 states, it's a lot of contact, but it's the same in all 50 states. We're very different here. And if you look at Lindora versus Isagenix, they explain it, the court explains it perfectly here. If the magnitude of a corporation's business activities in the forum state substantially exceeds the magnitude of the corporation's activities in other places, general jurisdiction may be appropriate in the forum state. For both USSS and the Olympic Committee, California has the most substantial contacts outside of their principal place of business than any other state in the United States. And so we are still advancing the general jurisdiction, especially as to the Olympic Committee and USSS, because California is the most substantial place outside of their principal place of business. And they are at home here. Especially when you look at the sheer amount of Olympics and what it takes to bring the Olympics here. They started in 2014. So are you arguing that the culture of sexual harassment in California enabled the sexual assaults outside of California? Is that one of your arguments or not? That's one of our arguments. But if you take the sexual harassment claims separately, which we do this analysis by claim, there wouldn't even have to be a sexual assault for that claim to be supported by acts in California. But to take advantage of the state statute to get around the statute of limitations, you need to have a claim arising out of a sexual assault, don't you? I mean, I don't know how narrowly that's read. Or related to. Or related to. And I believe it includes also sexual harassment and other sexual misconduct. But yes, it needs to be related to. But that statute obviously is about statute of limitations and not jurisdiction and whether or not it's fair to hail them into a court in California. Now, the related to language, though, isn't in the statute, right? It says damage is suffered as a result of sexual assault. I believe it is. And I will bring it. I will bring what I find on rebuttal for you. But I believe there is broader language in the lower sections, portions of that statute. OK. OK. But again, obviously, it's statute of limitations, which is different than personal jurisdiction. And so going back to the specific jurisdiction piece, it's vitally important for us to recognize that the court has established that related to is a separate problem. And it's just beyond to say that these claims here, especially when you think about the sexual harassment and the negligent hiring and supervision, when this team, I do think an important fact, and I'm just going to take a step back. These Olympic teams, it's not like the snowboarding team at the time when my clients were on it. They're living, practicing, doing everything in Utah and then traveling for the competitions and trainings. The team events, they travel to. So Erin O'Malley, for example, one of the plaintiffs, she lived in California. And then she would travel to these competitions and these trainings. So when you think about where they're traveling to and the fact that it was majority California, this team really is happening in California, mostly. Can we... Your specific examples of harmful actions in California, is that the pervasive culture of abuse? Pervasive culture of sexual harassment. Inappropriate touching. That's what you have. And how do you respond to the arguments about the PICO case and the other case saying, look, if you get harmed elsewhere just because you decide to travel to California or some other state and you happen to carry your harm with you, that that's not enough for personal jurisdiction? So the PICO case, they're carrying it back, but the injury's not continuing to occur. Peter Foley is traveling with them to these states. It's not that they're being harmed in Utah and then they go home to California and they're feeling the emotional distress. They're feeling PTSD and those issues. It's that he is continuing to travel through California with them. And I think to say that someone is not experiencing additional emotional distress or additional injury from especially our broader claims while they're having to practice, compete in front of a coach who has sexually abused them, I think is obviously incorrect. I think that if you're trying to compete in an elite level, train and compete, you are continuing to be injured, hence the negligent supervision and retention claim. You are continuing to be injured during those competitions, during those trainings, because the person in charge sexually abused you. Versus, had the assault just occurred, Peter Foley was gone as a coach and then they're training and competing under another coach, a new coach. That would be more like PICO. And with that, I'd like to at least close my opening by saying, you know, I want to emphasize the courage that my clients showed in coming forward to report Foley. A then 60, almost 60 year old man who spent the entire tenure as the head coach of the Olympic snowboarding team. Instead of apologizing or removing Peter Foley, USSS and the Olympic Committee officials turned a blind eye and even tried to silence my clients to keep them from reporting who was then still the current head coach. I apologize, I asked this before and you answered and I just, my notes are inadequate. You said your best claims are your sexual battery, sexual harassment. Did you say negligent supervision and retention? And the negligence claims. Okay, and then the what? What about the intentional or negligent infliction of emotional distress? Is that in your? So I'm including the negligent infliction of emotional distress in the negligence claims. Okay, but not intentional infliction of emotional distress. I think it's an important claim. It obviously has a little bit higher of a standard than the negligent infliction of emotional distress. So your four are sexual battery, sexual harassment, negligent infliction of emotional distress, and negligent supervision and retention, is that right? Correct, would be my four top claims. Okay, all right, thank you. Obviously not abandoning the rest. I assume that my time is up, so unless your honors have any further questions. And then if you have any questions on personal jurisdiction, Ms. Noah has a minute to address this. Thank you. Does anyone have questions? No, I think we're fine on that. Okay, Mr. Moore. Thank you, Judge Wardlock, and may it please the court. My name is Abe Moore. I'm counsel for the defendant and appellee, United States Ski Association,    or referred to as Ski and Snowboard, a non-profit corporation organized and headquartered in Utah. The court should affirm the district court's determination that it lacks personal jurisdiction over ski and snowboard. I'd like to discuss just a few points, and in doing so, also address the court's recent en banc decision in Briskin v. Shopify, authored by Judge Wardlock, and why it supports dismissing this dismissal here. So first, because of the nature of the claims at issue, this court should apply the purposeful direction test when assessing specific jurisdiction. Second, I'd like to address why the plaintiff's continuing harm or traveling harm theory of jurisdiction shouldn't be accepted by the court. Third, I'd like to address a fundamental problem with plaintiff's purposeful availment analysis, their alternative analysis, in that it relies, at least in part, on post-incident contacts with California. And finally, I'd like to explain why Ski and Snowboard's contacts with California do not relate to plaintiff's claims that arose outside of California. So first, Your Honors, because of the nature of the claims here, the court should apply the purposeful direction test. The district court properly found that... So you're just arguing specific jurisdiction? You're not arguing lack of general jurisdiction? Well, Your Honor, I think that it's pretty well established that there isn't general jurisdiction here. I could address any questions the court has on that point, but... Well, I think counsel for the plaintiff said that there is general jurisdiction as to Olympic Committee and the Ski and Snowboard Association because of the saturation of their contacts with California. They say there's nationwide. If you read Shopify, we talked about some of those cases where they're saying, we're present everywhere, so we can't be present anywhere. And I think that she's arguing that's not a viable defense for you to go into general jurisdiction in this case because you're more present here. Sure. With respect to general jurisdiction, it's a high hurdle to get past the place of incorporation and principle place of business to impose general jurisdiction over any corporation to show they're essentially at home in California. And here, we have a declaration in the record from our in-house counsel stating that less than 8% of ski and snowboard athletes are located in California. The rest are located around the country. Only a small minority of competitions have been held in California, less than 10%. And that out of 185 employees, only 8 are located in California, and they work remotely. They typically are working when they travel with the team. So under these facts, we're a far cry from general jurisdiction, which is why I intended to direct my analysis mostly to specific jurisdictions. And why purposeful direction rather than purposeful availment? The defendants, I'm sorry, the plaintiffs point to the language in Davis. This court in Davis recently said, well, yes, we would typically apply purposeful availment to contract claims, purposeful direction to tort claims, but it's not an ironclad rule. But even if it's not ironclad, this court hasn't abandoned the rule. In the Briskin v. Shopify case just earlier this year, the court acknowledged the language in Davis and nevertheless looked at the nature of the claims and held for claims sounding in tort, like the privacy and data use violations there, most often employ a purposeful direction analysis. So we have to look at the nature of the claims here against ski and snowboard. And I should initially point out that the sexual harassment claim is not against ski and snowboard. My client is not a defendant in the sexual harassment claim, which leaves the primary claims that counsel just identified of sexual assault and the negligence-based claims. And they're unique in this case. Why? Because as Judge Koh noticed, they are circumscribed by California's Sexual Abuse and Cover-Up Accountability Act. This is the revival statute. And it's an extraordinary statute doing away with the statute of limitations under very specific circumstances. And what are they? In order for the claims against ski and snowboard to be revived, they have to, number one, arise out of a sexual assault. Not relate to. Arise out of a sexual assault. What else? The claims have to seek damages. It's understandable that the plaintiffs would be harmed by Foley's sexual harassment in California. And that was going to create a culture that made sexual assaults happen, whether in California or elsewhere. And that's negligent supervision on the part of USSS. Well, Judge Koh, the negligent supervision claim states that my client failed to prevent a sexual assault. It has to. It has to allege that in order to survive, in order to meet this revival statute. That's the basis for the claim. My client failed to prevent this sexual assault because the other element of the revival statute is that ski and snowboard has to be legally responsible under some legal framework. I guess I disagree with you. I'm looking at the 14th cause of action, the negligent supervision or retention. It says, Foley was unfit or incompetent to work directly with plaintiffs and pose a particular risk of sexually harassing, assaulting, and or mentally abusing them. It says, USSS knew or should have known not only that Foley was unfit or incompetent to work directly with women and pose a particular risk of sexually harassing, assaulting, and or mentally abusing them. So I guess I'm, you're saying it's limited solely to sexual assault? Your Honor, I'm saying. Perhaps there's some paragraph that I'm missing, but I don't see that. It has to be narrowed to sexual assault by the revival statute. What the plaintiffs have represented is that their negligence claims, that all of their claims, their negligence claim, their breach of contract claim, their sexual assault claim, they all arise out of sexual assault. They all seek damages that are suffered as a result of the sexual assault, and that my client, Ski and Snowboard, is liable under some legal theory for those damages. Otherwise, these claims would never be before this court. This is conduct that occurred more than two decades ago. And in fact, if California doesn't have jurisdiction, these claims will not be asserted at all. Well, not necessarily, Your Honor. Well, other states don't have this revival. Or maybe you can tell me one that does. Many other states have implemented similar revival statutes. This is California's second revival statute, right? Right. So it's scooped up a lot of claims. It has, Your Honor. But in this case, the claims against my client just don't fit. So the revival statute sort of frames the relevant conduct, and it frames the relevant injury that has to be at least understood. You know, I'm just looking at this statute. I'm looking at Section 4, I guess it's 5. This subdivision revives any related claims, including but not limited to wrongful termination and sexual harassment arising out of the sexual assault. That is the basis for a claim pursuant to this subdivision. Right. You know, and I would suspect if we looked at the legislative history of this statute, the legislature that enacted this wanted this to have perpetrators be held accountable. And they were not trying to weave this in the most narrow way so that plaintiffs had no remedy, right? I mean, this includes the revival of sexual harassment claims. It may, Your Honor, there's no sexual harassment claim alleged against my client. The only sexual harassment claim is alleged against Coach Foley himself. The... Well, wouldn't your client be liable under Respondent Superior? No, Your Honor. And certainly we aren't named as a defendant in that claim. Any such conduct would have been far outside the coach's scope of duty or any authorized conduct by Ski and Snowboard, so there would be no Respondent Superior in that situation. And I misread this. The subdivision revives any related claims including, but not limited to, wrongful termination of sexual harassment. Including, but not limited to, related claims. So why would that not include the claims against your client? Well, Your Honor, the claims against my client, whether they're revived or not, they aren't. The question here is whether there is specific jurisdiction over my client in California. So in order to prove that my client is liable under this revival statute, the claims would have to show, under some legal theory, that Ski and Snowboard was responsible for the conduct that others allegedly engaged in. The actual assaults. There is no claim against my client for sexual harassment, but if there were, we'd have to demonstrate my client was responsible for that harassment. And I see that my time is up,  so if there are any other questions, I could certainly address them. In closing, the court should affirm the district court's finding that it lacks personal jurisdiction over Ski and Snowboard. Thank you. And Ms. Barnhart? Good morning, Your Honors. Lindsay Barnhart for the United States Olympic and Paralympic Committee, which I'll call USOPC for brevity. I don't intend to reach red ground. We've already covered, but I do want to use my time to underscore that each of these three defendants are differently situated, and of course, the plaintiffs need to establish specific personal, establish personal jurisdiction with respect to each defendant. USOPC is only a defendant in the Fletcher case, and the allegations against the USOPC considered in the context of the personal jurisdiction jurisprudence that's been well-developed even more clearly require dismissal of the USOPC, and there are three primary reasons for that. First, the vast majority of the conduct that is alleged focus on Mr. Foley and USSS. That alleged conduct cannot be imputed to the USOPC. When assessing personal jurisdiction by federal statute, USSS must operate autonomously from the USOPC free of outside restraint, and it's well settled that even if the USOPC and USSS could be considered in some sort of apparent subsidiary relationship, obviously, a subsidiary's contacts with the foreign state cannot be imputed to the parent company in absence of showing an alter ego. Once you set aside the allegations against the other defendants that cannot properly be imputed to the USOPC, you're left with a scattershot collection of jurisdictional contacts. Which claims are alleged against USOPC? I don't have the full list handy,  but it is the sexual harassment claims. Negligence. Correct. The sexual harassment claim is not alleged against the USOPC. Defamation is not alleged against the USOPC. Obviously, the assault itself, the battery, is not alleged against the USOPC. Negligence, negligent supervision and retention. Correct. Negligent infliction of emotional distress and breach of contract. Correct. And so, that's a good segue to the California contacts that are alleged by the USOPC have no bearing on any of those claims. The California contacts relate to Olympic Games held decades ago. Obviously, the Olympic Games occur for a very short amount of time and the USOPC's involvement in those claims has no connection, no nexus to the claims being alleged here. And, the other allegations relate to training facilities, Chula Vista and Carson training facilities where the plaintiffs do not allege any sexual abuse occurring at those facilities nor do they allege that they traveled to those facilities with Mr. Foley such that this culture of abuse traveled with him there. There is no allegation of any conduct by the USOPC in California that relates to any of the culture of abuse, any of the alleged abuse incidents themselves. There simply is no tie even if you accept the traveling theory of harm or if you accept that the allegations of USOPC California contacts do relate to  I know I'm almost out of time but I did, I actually am out of time, excuse me, so I'll answer any other questions but otherwise I'll conclude. So, I guess I'm unclear. So the one-half to one-third of training camps in California where Mammoth is the primary site for Olympic qualifiers, you're saying USOPC has nothing to do with that? The USOPC did not organize the training camps. There's no allegation that the USOPC organized, for example, the training camp that Rosie attended that then led to the travel to Nevada. But these are the promotion and training of Olympic qualifiers for USOPC, correct? There is no allegation that that event was an Olympic qualifier and there's also no allegation that the USOPC did anything other than quote-unquote host certain unidentified Olympic qualifiers during the relevant time period. So why shouldn't there be discovery on this? Why    in California for these domestic competitions that are in California for the purpose of identifying and recruiting Olympic athletes? Well, the plaintiffs know that the USOPC had nothing to do with those which is why they do not allege that the USOPC had anything to do with those training events. Again, according to the federal statutory construct, the USOPC does not govern the day-to-day activities of these sports. That's left to the NGBs of which USSS is one. The USOPC cannot, by federal law, engage in that sort of governance and day-to-day operation. And so I don't think there's any discovery required because I don't believe there's any dispute with respect to the USOPC's involvement in the kinds of training,  media events, et cetera, that are alleged in the complaint to have occurred in California. There is no link in the complaint between the USOPC and those activities. All right. Thank you,  All right. We have one more. One more D here. Ms. McCord. Good morning,  Honors, and may it please the Court. My name is Megan McCord on behalf of Appellant Peter Foley. With the Court's permission, I would like to take three minutes to briefly discuss the facts that appellants have not and cannot meet the minimum requirements necessary to confer personal jurisdiction over Mr. Foley.  Peter Foley is an  domiciled in  where he intends to  as evidenced by his long residency in the state. He has never resided in California. As such, there is no basis for personal general jurisdiction. In terms of purposeful direction, it is the  appropriate test for Mr.  as all the claims against him are sound in tort. Under the effects test, none of the appellants have alleged a single factual allegation of an intentional act by Mr. Foley expressly aimed at   Let me ask a question. Mr. Foley was the head coach for the Olympic snowboarding team from March of 2022. The complaint alleges that from 1995 to 2005, a third of all of the 109 U.S. S. S. domestic competitions occurred in California. You are saying the head of  the         How many did he attend? I don't have that requisite information. I believe the U.S. S. S. S. in-house council addressed the amount of events that were in California. I do know that his appearances and his travel to California are scant. In his declaration he talks about just in the last 10 years of his employment, he traveled to California less than three times. I understand that's what he is  saying. From 1995 to 2005, they are saying one half to one-third of the training camps for U.S. S.  were held in  You are saying the head of the U.S. Olympic snowboarding team would not have gone to the training camp for Olympic qualifiers in California during the time that he was head? It just seems odd that the head of the U.S. Olympic team would not be coming to training camps and competitions for the promotion,  and training of U.S. Olympic snowboarders.    the point. If his recollection might be off, it might be helpful to have discovery on the number of times that Mr. Foley attended a training camp or a competition of U.S. S. in the state of  correct? What I look at is the last 10 years of his employment and the fact that even though appellees say that there were just as many or similar amounts of  he can specifically say that he was only there on three occasions, leads me to believe that his contacts with California are scant. And there is nothing that happened before those 10 years that would change the amount of tournaments or his participation in  He says I was only there from 2013 to 2023 three times. He doesn't say the number of times he was in California during the time he was head coach of the U.S. He is providing his last 10 years as the head coach. And I don't have any reason to believe that those numbers or that pattern would be any different prior to that. In terms of what allegations appellees are alleging occurred in California, there is an issue that needs to be addressed in that. Appellees make no reference to any specific conduct that occurs in California. The one issue I have is that he chose 2013 to 2023 to disclose his contacts with  But if I look as to plaintiff Fletcher, she says she was assaulted in 1994. And then again in 97 and 2006. So he doesn't give the number of contacts with California during the relevant time period as opposed to plaintiff Fletcher. If I look at plaintiff O'Malley, she left by 2003. So he didn't give any of the contacts during that petitioner's claim. And if I just go through, he specifically chose to give his contacts eight years after the last assault from one of these plaintiffs. So why would that even be anyway? Go ahead, please.  think when we look at what appellants are saying in terms of their conduct, in terms of their attendance at events in California, we are not talking about a lot of events and they don't have the specific numbers in front of me, but they are in the second amendment complaint and they are not often. I think it also needs to be said that there is no specific act that appellants are alleging that occurred in California. So they are not saying that a sexual act took place in California. They cannot point to any specific conduct that Mr. Foley engaged in in California with respect to the plaintiffs that would give rise to a sexual harassment claim. And because of the scant travel to California, that I think is also evidenced by appellants attending to  But how  say that when he has not identified his contacts with California during the relevant period as to these three named plaintiffs? What I can't say Your Honor, that I don't believe that it was left  He chose a period almost 20 years later than the first plaintiff's  In 1994, he chose not to  until 2013. And Your  that was not left out by deception. The last 10 years are to his best recollection so that he can swear under oath that that is accurate. But discovery might be helpful on this case. I don't believe that jurisdiction discovery would be helpful in this case. Appellants are the people most knowledgeable as to what occurred to them and how they were victims of sexual assault, battery, and sexual harassment. They are the people with the most knowledge to say that this occurred in California on this date, at this time, and Mr. Foley engaged in exconduct. They had three bites of the  in their complaint, their first amendment complaint, and their second amendment complaint to identify what specific acts took place in California, and they did not do so. Okay. These were teenagers, and you're asking them to identify with detail things that happened to them 30 years ago when your own client, a grown man, can only remember what happened in the last 10 years, but for these people who were teenagers at the time, they have to remember everything with detail what happened to them 30 years ago. Your Honor, in looking at the fact that they could recall and  specific acts of sexual assault, I think demonstrates that the onus would be on them as part of demonstrating their causes of action that specific things took place at specific times. My client intends to deny the allegations, and so it would certainly be more difficult for an individual to recall specific events if nothing occurred. So while I don't believe that there are separate standards for my client versus them, I do believe that the onus is on the plaintiffs to demonstrate a prima facie case of sexual assault and sexual harassment and to  that these occurred in California in order to support jurisdiction.  counsel, you're well over your time. I apologize. Thank you very much. Ms. Anderson. Thank you. I should have six minutes, I believe.  Okay. So you used up a lot of your time, but they went well over their time. Is that okay, Judge Gilman? I would love to start by responding to the back and forth about Mr. Foley. I think you will look at their declarations and both declarations specifically pick the last ten years. Something substantially changes, that changes what happened when my clients were on the team and after, and that's the opening of a facility in Mt. Hood in Oregon dedicated for the U.S. snowboarding team. And so, yes, there is a shift and that is why they're focused on the last ten years and not at the time that my plaintiff's  occurred. We addressed that timing. Your plaintiffs were at the  of the formation of this whole team, right? Correct. And Callan is one of the later ones and she leaves the team at 2014. Her assault is in 2005. So it's within that time frame. And Mt. Hood was formed in 2013? I don't know the exact date but that shifts right around that time that they opened that facility. And we allege the head coach was not at competitions and trainings.  our allegations include that they are traveling with the team and the coach to all of these trainings and events. So while they don't pinpoint specific dates and specific times, they talk about what's occurring in  What is your position vis-a-vis jurisdictional discovery? I think it's  to keep in mind that there's plenty of allegations that very reasonable inferences are that that's occurring in California. What is your position vis-a-vis jurisdictional discovery? Our position is that we should have jurisdictional discovery if the court thinks there is not enough facts here to support jurisdiction. However, we think there's plenty, especially when you look at the related two-prong. And so it's probably important that I address some of what was mentioned   10, Yahoo, this court has consistently said that you can apply both purposeful availment and purposeful direction, even in tort cases, and that you really look to the case. And I would really stress global commodities, and that's a 2029th  We have been  whether a defendant has minimum contacts with the forum, and they found that the district court erred by considering only the documents that were the subject of the breach without looking at their ongoing course of  and also that the district court erred in only addressing a specific claim and not all of the claims that the plaintiffs brought. And I think there's a lot of analogies to be had there to our case. As far as general jurisdiction, you didn't hear either counsel stand up and tell you that California is not their second most state with contacts. They didn't come up here and tell you we have way more contacts in this other state or that state or this state. They just told you where their principal place of business is. And that's because California is they have when you do the  analysis and you compare other states with California, California is the number one place they are outside of their principal place of   And I also just want to stress that one of the facts that was left out by the Olympic Committee for facts relevant to this case, so specific jurisdiction, is that Alan Ashley, the individual, if we all recall, has been fired because of his handling of Nassar, started on the USSS team with Peter Foley. And he went on to be an official at the U.S. Olympic Committee during this time frame. So he goes from being, and he's alleged in the complaint to be at many of these activities, many of this travel, seeing this culture and this conduct, goes to the  Committee after that. And I think it's also important to  note that  appellees love to raise Brown versus Taekwondo to say they don't have control over these  It's very important to note that that California case said you do have control over the  And the only reason they said they didn't have control over the was because  employed by the NGB. And here Peter Foley was employed by the NGB. He was employed by USSS. He was the head coach of the Olympic team. And that stands in difference. And that's the difference in that case. So with that, I would just, unless I'm        very important here and I think it was something that stood out in Briskin and that's that  has every right to pass a law to ensure that  and organizations do not use its state for the benefit for their benefit while at the same time facilitating and covering up sexual abuse, negligence and harassment as Judge Code noted related to claims related to sexual assaults and abuse especially when it includes one of the most             I'm here to talk about jurisdictional discovery which it does seem like the panel is interested in. As my colleague discussed, we do have         For which discovery would be quite helpful. That would include while the district court found there were sufficient contacts from all three defendants, additional discovery could substantially impact the court's  and a denial of jurisdictional discovery will be overturned where there's a reasonable probability that the  would have been different. What's your answer to the point that your clients should know all the contacts? Why should you need to know all the contacts? I think it's   that the case is not  case of a case of a case of      case of a case of    a       case of even there being    the VR moment.        looks   court will     of the    for the trips it  athletes and coaches and staff sleeping in hotel rooms and hotel beds by design because of the trips. These records would be helpful to the court's  on jurisdictional discovery should the court find that jurisdiction is not sufficiently alleged as it is. Thank you counsel. Nicola versus Foley will be submitted and the session of the court is adjourned for today. Thank you counsel. I'll rise.
judges: Gilman, WARDLAW, KOH